JAMES C. CURRY,

      Petitioner,

v.                                 Case No. 3:16-cv-1487-J-32MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et. al.,

      Respondents.

---

## ORDER

### I. Status

Petitioner, James C. Curry, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. See Doc. 1. Petitioner challenges a state court (Clay County, Florida) judgment of conviction for armed robbery. Id. at 1. He is currently serving a twenty-five-year term of incarceration. Id. Respondents filed a Response.[1] See Doc. 19. Petitioner filed a Reply. See Doc. 22. This case is ripe for review.

### II. Governing Legal Principals

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic

---

[1] Respondents also filed several exhibits to their Response. See Doc. 18. The Court cites to the exhibits as "Resp. Ex."

& Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral

review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the """opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."' Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims,

4

> including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[2] supra, at 747–748, 111 S. Ct. 2546; Sykes,[3] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).

[3] Wainwright v. Sykes, 433 U.S. 72 (1977).

[4] Murray v. Carrier, 477 U.S. 478 (1986).

> fundamental fairness." Id. at 1261 (quoting Carrier, 477
> U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v.</u>

*Mirzayance*, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. *Richter*, 562 U.S. at 105. As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." *Id.* (citing *Richter*, 562 U.S. at 105); *see also Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III. Analysis

### A. Ground One

Petitioner contends that trial counsel was ineffective for failing to inform the trial court that the state committed a *Brady*[5] violation by withholding evidence of Petitioner's wallet prior to trial. *See* Doc. 1 at 4. According to Petitioner, the police obtained Petitioner's wallet at the time of Petitioner's arrest and they failed to provide the wallet and its contents to trial counsel during discovery. Petitioner maintains that the wallet contained a receipt that would have supported an alibi defense that he was

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

not at the Food Lion at the time of the robbery, but was instead making a purchase at an Exxon gas station. Petitioner further argues that trial counsel was ineffective for failing to request a <u>Richardson</u>[6] hearing when the state used Petitioner's wallet to bolster its case during closing arguments and refute Petitioner's defense of misidentification.

Petitioner raised this claim in his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. Resp. Ex. J at 28-34. Following an evidentiary hearing in which Petitioner was represented by postconviction counsel, the trial court denied these claims, finding in pertinent part:

> Defendant avers he received ineffective assistance when counsel failed to object and request a <u>Richardson</u> hearing when it became apparent the State withheld material evidence. Specifically, Defendant alleges he told counsel he had his wallet when he was arrested and his wallet contained a receipt that would prove he was not the perpetrator of the robbery. [FN2 Due to passage of time, evidence in this case has been destroyed.] The Court conducted an evidentiary hearing on this claim.
>
> "[I]t is within the province of the finder of fact 'to rely upon the testimony found by it to be worthy of belief and to reject such testimony found by it to be untrue'. . . ." <u>Smith v. State</u>, 697 So. 2d 991, 992 (Fla. 4th DCA 1997). Accordingly, after an evidentiary hearing, a trial court may find trial counsel's testimony more credible than a defendant's testimony and assertions. <u>Thomas v. State</u>, 838 So. 2d 535, 540-41 (Fla. 2003). A trial court's credibility determination will be upheld on appeal if supported by competent, substantial evidence. <u>Monestime v. State</u>, 88 So. 3d 204, 204 (Fla. 3d DCA 2011); <u>Schofield v. State</u>, 67 So. 3d 1066, 1072 Fla. 2d DCA 2011).
>
> At the evidentiary hearing, Mr. Wright (trial counsel)

---

[6] <u>Richardson v. State</u>, 246 So. 2d 771 (Fla. 1971).

testified that Defendant failed to mention any alibi as the defense was developing. Originally, Defendant told Mr. Wright he went to the Exxon gas station before going to Club Christopher but stayed outside while his friend Rodney Williams made a purchase. Mr. Wright had no notes reporting that Defendant told him he entered the Exxon or purchased anything. Defendant did tell Mr. Wright he saw someone outside the gas station and had a conversation. (Ex. D.)

Later, Mr. Wright and Defendant viewed the evidence photos depicting the wallet. Mr. Wright testified Defendant still did not mention a receipt or anything that could be construed as an alibi. Defendant eventually mentioned Mike the Exxon employee, but the story involving Mike was different from Defendant's original story. (Ex. D.) At trial, Defendant testified that he went to Exxon after leaving Club Christopher; that he met Mike at the Exxon, where he purchased a candy bar; and that there should be a video of his presence at the Exxon. [FN3 It is troubling that Defendant would present this version of events to the jury but fail to testify about the receipt that would exonerate him.] (Ex. C at 253-60; 270-78.) Based on the jury's verdict, they rejected this version of events.

Further, there was a great deal of evidence against Defendant, including: the large amount of cash found in the bag he was carrying (which matched the amount of money stolen from Food Lion within $50.00); the gun which matched the witnesses' description of the weapon brandished by the robber; eyewitness identification; and the Food Lion video showing a man in camouflage shorts like those Defendant was wearing when apprehended. (Ex. C at 103-11; 126-30; 146-51; 169; 185-98; 212; Ex. E.)

The Court finds Mr. Wright's testimony more credible than Defendant's testimony and written assertions that he told counsel about Mike and the receipt. It follows that no Brady violation occurred. Defendant has failed to meet his burden under Strickland. Claim [Two] is denied.

Resp. Ex. N at 150-51. The First District Court of Appeal per curiam affirmed the

trial court's denial without a written opinion. Resp. Ex. W. To the extent that the First

DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

As to Petitioner's <u>Brady</u> claim, Petitioner must prove that (1) the government possessed evidence favorable to the defense; (2) Petitioner did not possess the evidence and could not have obtained it with any reasonable diligence; (3) the government suppressed the favorable evidence; and, (4) the evidence was material in that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense. <u>United States v. Neufeld</u>, 154 F. App'x 813, 818 (11th Cir. 2005) (citation omitted); <u>LeCroy v. Sec'y Fla. Dep't of Corr.</u>, 421 F.3d 1237, 1268 (11th Cir. 2005) (citation omitted); <u>Chandler v. Moore</u>, 240 F.3d 907, 915 (11th Cir. 2001) (citation omitted).

The record supports the state court's conclusion that this did not amount to a <u>Brady</u> violation. Indeed, Petitioner had multiple opportunities to identify or mention this evidence during his trial testimony. At trial, Petitioner testified that on the night of the robbery, he, Rodney Williams, and another individual named Black were together. Resp. Ex. B at 253. He stated that Williams asked Petitioner for a "favor," explaining that Williams needed Petitioner to deliver a package to someone waiting in the Home Depot parking lot. <u>Id.</u> Petitioner testified that Williams then dropped Petitioner off at the Exxon store while Williams and Black advised Petitioner that they were going to a liquor store. <u>Id.</u> at 253-55. Petitioner stated that he went into the Exxon, bought a candy bar, and spoke with the Exxon cashier for a while. Resp. Ex. C

at 254-55. He stated that Williams and Black then picked Petitioner back up, but they were dressed differently. Id. at 255. Petitioner testified that Williams then handed Petitioner a black shoulder bag to deliver to Home Depot. Id. at 255. Petitioner explained that he took the bag and as he began walking to Home Depot, he got stopped by police. Id. at 258. According to Petitioner, when he was apprehended, he had his wallet on him, and his "identification" fell out of his pocket and an officer then put the "identification" in his pocket. Resp. Ex. C at 283-84. Petitioner stated that he has not seen his "identification" since the apprehension. Id. at 284.

Petitioner also had multiple opportunities to tell trial counsel about this wallet or receipt prior to trial. Trial counsel testified at the evidentiary hearing that prior to trial, he reviewed a crime scene photo that depicted Petitioner's wallet. Resp. Ex. Q at 399-400. He explained that when he reviewed the photo with Petitioner, Petitioner never mentioned having stored an Exxon receipt in the wallet or any other evidence supporting an alibi defense. Id. at 400. Rather, trial counsel testified that during pretrial discussions, Petitioner told trial counsel that Williams, not Petitioner, went into the Exxon store to buy cigarettes while Petitioner waited outside of the store. Id. at 409. As such, trial counsel explained that he could not have had an Exxon employee testify or provide evidence of the Exxon security footage because it too would not have supported an alibi defense. Id. at 109-10.

Petitioner also cannot demonstrate a reasonable probability that the outcome of his trial would have been different had the alleged receipt been admitted at trial. At the evidentiary hearing, Petitioner testified that he was given the black bag

containing a Target bag, the stolen money, and a gun <u>prior</u> to his trip to the Exxon. Resp. Ex. Q at 381. At trial, however, Petitioner testified that he was given the bag containing evidence of the robbery <u>after</u> his Exxon trip. The trial court highlighted this contradiction at the evidentiary hearing and asked Petitioner to clarify; however, Petitioner only compounded this confusion by responding that the eyewitnesses' trial testimony regarding the time of the robbery was wrong. <u>Id.</u> at 411-12. Nevertheless, Petitioner admitted at the evidentiary hearing that at the time he was apprehended, he was wearing camouflage shorts that matched the shorts depicted in the Food Lion surveillance footage of the perpetrator at the time of the offense. <u>Id.</u> at 383. The surveillance footage of the robbery was played for the jury during eyewitness Heather Deloach's trial testimony. Resp. Ex. B at 104-11. Also, as the state court noted, when Petitioner was apprehended, he was carrying a bag containing a large amount of cash (which matched the amount of money stolen from Food Lion within $50.00) and the gun which matched the witnesses' description of the weapon brandished by the robber. Having reviewed the record, the Court finds that the state presented substantial evidence of Petitioner's guilt.

As such, while the state may have had possession of Petitioner's wallet, Petitioner clearly knew about the wallet and/or its contents (i.e., receipt). He knew that the police took possession of the wallet at the time of his arrest. Petitioner does not allege that the state suppressed evidence of the wallet or its contents after his arrest or withheld it from him, and Petitioner cannot demonstrate that the wallet or its contents were material. Finding no <u>Brady</u> violation, it follows that there can be no

meritorious claim of ineffective assistance of counsel for failure to investigate and raise a <u>Brady</u> claim.

As to Petitioner's <u>Richardson</u> claim, "[a] <u>Richardson</u> hearing is held to determine whether the State committed a discovery violation in contravention of the Florida Rules of Criminal Procedure and, if so, whether the non-compliance resulted in prejudice to the defendant's ability to prepare for trial." <u>Cisneros v. McNeil</u>, No. 8:05-cv-762-T-27TGW, 2008 WL 1836368, at *5 (M.D. Fla. Apr. 23, 2008). To support his contention that the state committed a discovery violation, the only evidence Petitioner references is the following statement made during the state's closing argument: "Here's the bag. Here's his cigarettes and lighter right with the stuff from the bag. He testified twice that he was smoking cigarettes. And here's a wallet right with the bag with everything. He testified he had his wallet. And here's his gun. It's all right there together." Resp. Ex. C at 327. Initially, whether this statement amounted to a discovery violation is a question of state law, and thus, the Court defers to the state court's determination that trial counsel was not deficient for failing to object. <u>See</u> <u>Huddleston v. Sec'y Dep't of Corr.</u>, No. 8:16-cv-76-T-02AAS, 2019 WL 339225, at *5 (M.D. Fla. Jan. 28, 2019) (holding that [w]hile the issue before the court is one of ineffective assistance, a question cognizable on federal habeas review, the underlying issue of whether a discovery violation occurred under Florida law and whether counsel should have objected and moved for a <u>Richardson</u> hearing is a question of state law" that binds the court). In any event, given the substantial evidence of Petitioner's guilt, Petitioner cannot demonstrate prejudice under

<u>Strickland</u>.

In sum, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground One is denied.

## B. Ground Two

Petitioner contends that trial counsel was ineffective for failing to file a motion to suppress or object to the state's illegally obtained out-of-court identification evidence. Doc. 1 at 11. According to Petitioner, the police identification procedures were unduly suggestive and intentionally arranged to guarantee that eyewitnesses Heather Deloach, Matthew Hearra, and Janice Hawks would identify Petitioner as the robber.

Petitioner raised this claim in his Rule 3.850 Motion. Resp. Ex. J at 43-45. The trial court summarily denied the claim, finding in relevant part:

> Defendant argues counsel should have moved to suppress law enforcement's "impermissibly suggestive out-of-court identification procedures" and failed to object to Deloach's in-court identification as tainted by the out-of-court procedures. Defendant further avers that police misstated facts and advised Deloach they had recovered a camouflage shirt and a Target bag. He also alleges that the eyewitnesses talked to several officers prior to providing a statement; and the store manager was allowed to view the videotape of the robbery and discuss it with the witnesses before police conducted the show-up. Finally, he takes issue with the fact that two of the eyewitnesses did not get a good look at his face and no one mentioned his moles.

A show-up is recognized as a suggestive identification procedure, but is not invalid unless law enforcement increases the suggestiveness of the confrontation, or the procedure gives rise to a substantial likelihood of misidentification. Jenkins v. State, 96 So. 3d 1110, ii 12 (Fla. 1st DCA 2012). Factors to be considered when determining whether the procedure resulted in a substantial likelihood of misidentification are: the witness's opportunity to view the suspect during the crime; the witness's degree of attention; the accuracy of the witness's description of the suspect; the level of certainty of the witness; and the length of time between the crime and the show-up. Perez v. State, 648 So. 2d 715, 719 (Fla. 1995).

Defendant's allegations are speculative and unsupported. After review of the record, the Court finds no error in police or witness conduct; or in the show-up procedure. (Ex. C at 95-155; Exs. E, F.) Moreover, at trial, counsel thoroughly cross-examined the witnesses about their identification of Defendant; any conversations with other witnesses; their statements; and any information given to the witnesses about the evidence. (Ex. C at 95-155.) Through this cross-examination before the jury, counsel challenged the witnesses' identification of Defendant. Hence, Defendant cannot demonstrate he was prejudiced by counsel's failure to file a motion to suppress. Claim Six is denied.

Resp. Ex. N at 153-54. The First DCA per curiam affirmed the trial court's summary denial without a written opinion. Resp. Ex. W. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

In applying such deference, the Court will provide context to Petitioner's claim. Heather Deloach, Janice Hawks, and Matthew Hearra were working at the Food Lion at the time of the armed robbery. Resp. Ex. B at 143-44. As the three employees were

closing the store, a man walked toward Deloach from the back of the store and asked to see Hearra. Id. at 99-101. Deloach took the man to the back office where Hearra and with Hawks were closing up. Id. Upon entering the office, the man pulled out a gun and told Hearra to start filling the Target bag he was holding with cash. Id. The man also pointed the gun at Deloach and Hawks and told them to get on their knees. Id. at 102-29. Hawks testified that the assailant was a tall black male about six feet tall and wearing camouflage clothes. Id. at 146. Hawks stated that she had an opportunity to see the gun the man was holding because she was less than a foot away from the gun and it was eye level to her. Id. Once the man left, Hawks called police and gave them a description of the man. Id. at 151. Hawks stated the police then brought Petitioner to the store to be identified. Id. She testified that "it was hard for me to recognize him because, like I sa[id], all I seen was the gun. I didn't really look at him at all." Id. However, Hawks did confidently identify the gun that was used. Id. at 152.

Deloach testified that the man police brought to the store for identification was the same man who robbed the store. Id. at 110-11. She did note, however, that at the time she identified him, he was wearing a different shirt than the one he was wearing at the time of the robbery. Id. On cross-examination, trial counsel attempted to discredit Deloach's positive identification by eliciting contradictory deposition testimony regarding the color of the assailant's shoes. Id. at 114-15.

Hearra testified at trial that he only got a glimpse of the assailant during the robbery, but remembered his clothing. Id. at 125. The robber was within a foot of Hearra as he put the money into the Target bag, and he was able to get a good view of

the assailant's gun. Id. at 128. Further, according to Hearra, he, Deloach, and Hawks did not speak to one another before the police arrived and police then separated the witnesses before they gave their statements to police. Id. at 137. Hearra testified that he identified the same person the police brought back to the store as the person who robbed them. Id. at 130. On cross-examination of Hearra, trial counsel challenged Hearra's testimony by eliciting statements that Hearra did not see the man's teeth or facial hair, and he acknowledged that the man was wearing a hat during the robbery. Id. at 130-32.

The trial court recognized that there is "a due process check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." Perry v. New Hampshire, 565 U.S. 228, 232 (2012). An out-of-court identification is subject to exclusion if the identification procedure was unduly suggestive such that it created a substantial risk of misidentification. Neil v. Biggers, 409 U.S. 188, 199 (1972). In determining whether an identification violates due process, a court undertakes a two-part analysis. "First, we must determine whether the original identification procedure was unduly suggestive . . . . If we conclude that the identification procedure was suggestive, we must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable." Cikora v. Dugger, 840 F.2d 893, 895 (11th Cir. 1988) (citing Biggers, 409 U.S. at 199). The trial court also cited to the five factors the Supreme Court has identified to be considered in determining whether the identification was reliable. See Biggers, 409

U.S. at 199. In <u>Manson v. Brathwaite</u>, 432 U.S. 98 (1977), the United States Supreme Court stated that absent "a very substantial likelihood of irreparable misidentification," the identification of a suspect by a witness is evidence for the jury to weigh. <u>Id.</u> at 116.

Under the totality of the circumstances, the witnesses' identification was reliable. Applying the five factors: (1) all witnesses saw Petitioner during the crime; (2) the witnesses ability to affirmatively describe Petitioner's clothing and the gun supports their degree of attention; (3) the witnesses positively and accurately described Petitioner's appearance; (4) while Hawk and Hearra had a difficult time identifying Petitioner's face, they were confident about their identification of Petitioner's gun and the clothing he was wearing; and (5) the witnesses made their identification within hours of the incident. Accordingly, counsel was not deficient for failing to file a motion to suppress these identifications. Further, Petitioner cannot demonstrate prejudice as trial counsel adequately cross-examined these witnesses regarding their identifications, <u>see</u> Resp. Ex. B at 114-15, 130-32, and the state presented sufficient evidence of Petitioner's guilt.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claims was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Two is denied.

## C. Ground Three

Petitioner asserts that trial counsel was ineffective for failing to object when the trial court departed from its required neutrality and gave "tips to the state." Doc. 1 at 13. According to Petitioner, during sidebar, the trial court advised the state how to lay the proper predicate for admitting the Target bag into evidence. Id. Petitioner also appears to argue that trial counsel should have objected when the trial court refused to allow the jury to have a copy of the transcript during deliberations, because when the state indicated it was in favor of providing the transcript, the trial court informed the state that it was "asking for trouble." Petitioner further asserts that trial counsel was ineffective for failing to ensure that the jury was provided with a copy of Deloach's trial testimony or a readback when it requested the transcript during deliberations.

Petitioner raised these issues in his Rule 3.850 motion. Resp. Ex. J at 21-28. When addressing Petitioner's allegations regarding the trial court improperly "giving tips" to the state, the trial court summarily denied these claims as follows:

> Defendant argues that counsel erred when he failed to object when the Court gave "tips to the State" and did not remain impartial. Defendant provides four specific examples of the Court's tips to the State: 1) The judge advised the jury that all of the evidence received during trial would be available for review during deliberations; 2) The Court refused to receive a bag into evidence until the State laid a proper foundation for its receipt and then assisted the State in laying the proper foundation; 3) The Court, when denying the jury's request to have a transcript of the trial testimony, advised the State it would be "asking for trouble" if the request was granted; and 4) The Court erred by denying the jury's request for a transcript or a rereading of the State's key witness's testimony and "sustaining an

> objection counsel never made."

> The Court has reviewed all of the disputed issues and finds no improper exchanges between the Court and the State, (Ex. C at 165-66; 172-73; 368-72.) Claim One is denied.

Resp. Ex. N at 149-50. When summarily denying Petitioner's allegation regarding trial counsel's failure to ensure that the jury was provided with a copy of Deloach's trial testimony when it requested it during deliberations, the trial court found in relevant part:

> Defendant alleges counsel should have ensured the jury was allowed to have crucial testimony read back to them upon request.

> To the extent Defendant argues the Court erred in denying the jury's request for a transcript of Deloach's testimony or to have it read back to them, this argument is procedurally barred and should have been raised on direct appeal. Harvey v. Dugger, 656 So. 2d 1253 (Fla. 1995); Cherry v. State, 659 So. 2d 1069 (Fla. 1995).

> Defendant's argument that counsel should have ensured that the testimony was reread to the jury also fails. Counsel was asked to confer with Defendant about whether Deloach's testimony should be read to the Court. Defendant decided that he did not want a portion of the testimony to be given to the jury. (Ex. C at 368-72.) Hence, Defendant cannot meet either prong of Strickland. Claim Seven is denied.

Resp. Ex. N at 7. The First DCA per curiam affirmed the trial court denial of both of these grounds without issuing a written opinion. Resp. Ex. W. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address these claims in accordance with the deferential standard for federal court review of state court adjudications.

Petitioner cannot show deficient performance by counsel because trial counsel had no grounds to object to the trial court allegedly "giving tips" to the state regarding the admission of the Target bag. In context, it is clear from the record that the trial court was simply ensuring that the parties followed the rules of evidence. See Resp. Ex. B at 172. As to the jury's requests to view portions of the trial transcript during deliberations, the trial court was exercising its authority and discretion in presiding over a jury trial. See Resp. Ex. C at 368-72. Further, when the jury requested Deloach's trial testimony, the trial court asked trial counsel whether he objected. Id. at 370-71. After conferring with Petitioner, trial counsel advised the trial court that they objected to the jury receiving a portion of the trial transcript. Id. at 371. Petitioner cannot overcome the presumption that trial counsel's decision to object or not object was strategic. Not only will the Court refrain from second-guessing counsel's strategic decisions, but Petitioner fails to suggest how he was specifically prejudiced by these alleged errors. Instead, Petitioner's claim, as presented in the Petition, is too general and conclusory to support a claim for federal habeas relief. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny these claims because Petitioner had not shown deficient performance by his counsel or prejudice is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable

determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Three is denied.

## D. Ground Four

Petitioner contends that trial counsel was ineffective for failing to object and move to strike the jury panel when the trial court mistakenly informed the venire during jury selection that Petitioner was facing additional charges other than the single armed robbery charge for which he was being tried. Doc. 1 at 16-17. According to Petitioner, the trial court improperly informed the jury that Petitioner was also facing a charge for possession of less than twenty grams of cannabis, a charge that the state was not proceeding on.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. J at 40-43. The trial court summarily denied the claim as follows:

> Defendant avers counsel failed to object or move to strike the jury panel when the Court began reading the information prior to knowing the State was only proceeding on Count One. Hence, inadvertently, the venire heard that Defendant also faced a charge of possession of less than twenty grams of cannabis. (Ex. C at 11-12.)
>
> The Court gave counsel an opportunity to confer with Defendant and lodge an objection to moving forward. Defendant agreed to continue with trial. (Ex. C at 67.) As the record reflects Defendant agreed to go forward with trial, he cannot now complain that counsel provided ineffective assistance for failing to lodge an objection to the venire. Claim Five is denied.

Resp. Ex. N at 152-53. The First DCA per curiam affirmed the trial court's summary denial without a written opinion. Resp. Ex. W. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in

accordance with the deferential standard for federal court review of state court adjudications.

At the beginning of jury selection, the trial court inadvertently began reading the original Information that contained the armed robbery count and an additional count for possession. Resp. Ex. A at 12. As the trial court was reading, the state requested a sidebar that was conducted off the record. <u>Id.</u> The trial court then instructed the panel that there had been an amended Information. <u>Id.</u> After questioning the jurors but before the parties began challenges, the trial court clarified that during the side bar, trial counsel did not object to the trial court's misstatement of the charges but asked that trial counsel confer with Petitioner just to clarify his understanding. <u>Id.</u> at 67. Following a discussion with Petitioner, trial counsel represented to the trial court that Petitioner was fine with the trial court's correction of the error. <u>Id.</u> 67-68.

The trial court promptly corrected its mistake, gave both trial counsel and Petitioner an opportunity to object to the trial court's corrective action, and trial counsel and Petitioner agreed to go forward with the jury pool. The reasonableness of counsel's actions may be substantially influenced by the client's own actions, and Petitioner's agreement with trial counsel's decision not to object to the misstatement indicates that counsel's presumed strategic decision not to move to strike the jury panel was reasonable. <u>See, e.g.</u>, <u>Price v. Sec'y Dep't of Corr.</u>, 558 F. App'x 871, 872-73 (11th Cir. 2014) (holding that it was not an unreasonable application of clearly established federal law for the Florida courts to conclude that defendant could not

argue that counsel had been ineffective for failing to strike a juror that the defendant had approved); <u>Kelley v. State</u>, 109 So. 3d 811, 812 (Fla. 1st DCA 2013) ("Thus, it follows that a defendant who, like Appellant, personally affirms his acceptance of the jury panel will not be heard to complain in a postconviction motion that his counsel was ineffective for allowing a biased juror to serve on his jury.").

Accordingly, after a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Four is due to be denied.

## E. Ground Five

Petitioner argues that trial counsel was ineffective for failing to locate, interview, investigate, or call an exculpatory witness during trial. Doc. 1 at 17-20. Petitioner asserts that prior to trial, he advised counsel to call Food Lion employee Dean Herbert as a witness, because Herbert would have testified that Petitioner was a regular customer of Food Lion, that the three eyewitnesses had served Petitioner in the past, and that the three eyewitnesses had spoken with coworkers about the incident the day after the robbery. Petitioner contends that Herbert's testimony would have corroborated Petitioner's misidentification defense and shown that the three eyewitnesses recognized Petitioner during the initial identification, but connected him to the robbery only because they relied on the police's false assertion that Petitioner

was wearing the same shirt that the robber was wearing when they apprehended him.

Petitioner raised this issue in his Rule 3.850 motion. Resp. Ex. J at 48-50. The trial court conducted an evidentiary hearing on this Ground, during which it heard testimony from Herbert and trial counsel. Resp. Ex. Q. Thereafter, the trial court denied the issue as follows:

> Defendant avers counsel should have located and called Dean, a Food Lion employee, as an exculpatory witness at trial. This claim was heard at the evidentiary hearing.

> "'[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.'"[] Beasley v. State, 18 So. 3d 473, 782-83 (Fla. 2009). As long as an attorney has considered and rejected alternative courses of action, tactical or strategic choices do not constitute deficient conduct on the part of the attorney. Bolin v. State, 41 So. 3d 151, 159 (Fla. 2010) (citing Henry v. State, 948 So. 2d 609 (Fla. 2006)); see Kenon v. State, 855 So. 2d 654, 656 (Fla. 1st DCA 2003) (finding that "absent extraordinary circumstances, strategic or tactical decisions by trial counsel are not Claims for ineffective assistance of counsel claims."). Even if a defendant proves that counsel's performance was deficient under Strickland, he must establish the prejudice prong as well. Henry v. State, 948 So. 2d 609, 617 (Fla. 2006).

> Dean Herbert testified that he knew Defendant as a regular Food Lion customer. (Ex. D.) When questioned about why he did not investigate Herbert as a potential defense witness, Mr. Wright testified that the witnesses to the robbery did not recognize Defendant. Further, Herbert's recognition of Defendant would not have strengthened the defense because Herbert was not working on the night of the robbery. While Mr. Wright recognized that it was not as likely that someone would rob a place he frequents, he did not want to open the door for the counterargument that a person might be more likely to rob a place he knew well. (Ex.

D.) Hence, it was a reasonable strategic decision by counsel not to investigate Herbert and present his testimony. Defendant has not met his burden under <u>Strickland</u>, therefore Claim Eight is denied.

Resp. Ex. N at 154-55. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. W. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

The record belies Petitioner's assertion that Herbert was a viable defense witness. During the evidentiary hearing, trial counsel testified that Herbert would have been outside the scope of his defense strategy prior to trial, because Herbert was not an eyewitness working the night of the robbery. Resp. Ex. Q at 403. He also testified that it likely would not have mattered if someone could testify that Petitioner was a regular customer at Food Lion. <u>Id.</u> at 407. Herbert's evidentiary hearing testimony supports trial counsel's conclusion. Herbert testified that he was not at the Food Lion at the time of the robbery and that he only learned about it the following day. <u>Id.</u> at 363. Herbert explained that he recognized Petitioner's photo in the newspaper the day after the robbery and stated that the "only thing he said about the matter" was that he knew Petitioner to be a regular customer and recalled that he made that statement to other coworkers, though he could not remember who he told. <u>Id.</u> He further explained that had he been called as a witness, the only testimony he would be able to offer is that he had seen Petitioner in the Food Lion on prior occasions but admitted that other coworkers did not recognize him as a regular customer. <u>Id.</u> at 364. As such, counsel made a reasonable strategic decision to not call Herbert as a

witness. In any event, during trial, Petitioner testified that he knew all of the victims because he was a daily Food Lion customer. Resp. Ex. C at 279. As such, any testimony from Herbert regarding Petitioner's recurrent customer status at Food Lion would have been cumulative.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Applying AEDPA deference, Ground Five is denied.

## F. Ground Six

Petitioner contends that trial counsel was ineffective for failing to object to the state's use of a peremptory challenge to strike juror number 2, one of the only two black jurors in the jury pool, and the trial court's failure to conduct the requisite three-step analysis for race-based peremptory challenges under <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). Doc. 1 at 20-21.

To add context to Petitioner's claim, the Court summarizes the events that give rise to this allegation. During jury selection, the following exchange occurred between trial counsel and prospective juror number 2, Ms. Matthews, and prospective juror Mr. Bingham:

> MR. WRIGHT: All right. Well okay – okay. Mr. – let's see here – Mr. Bingham, do you think that identifying somebody from a different race is more difficult than identifying somebody from your own race?
>
> PROSPECTIVE JUROR [Mr. Bingham]: Yes.

> MR WRIGHT: Okay. Ms. Matthews, do you agree or
> disagree?
>
> PROSPECTIVE JUROR [Ms. Matthews]: I agree.

Resp. Ex. A at 62. After this questioning, the trial court gave each party ten

peremptory strikes. Id. at 68. The following exchange then occurred:

> MS. ZIMA: The state would strike number 2, Ms.
> Matthews.
>
> . . .
>
> MR. WRIGHT: Judge, with regard to Ms. Matthews, I would
> object based upon her race, if there's a race-neutral reason.
>
> THE COURT: Agreed. The juror was black and we need a
> race-neutral reason.
>
> MS. ZIMA: Yes, Your Honor. Ms. Matthews specifically
> stated that cross-racial identification is more difficult than
> intraracial identification, so she has obviously prejudged
> that issue. That is a huge issue in this case. And it's a race-
> neutral issue because Mr. Bingham also said it, and he's
> white, and I'm going to strike him too.
>
> THE COURT: The court finds that it is a sufficient race-
> neutral reason to excuse that juror.

Id. at 71-72. After the parties agreed on the six jury members, the trial court gave each

party one peremptory challenge to choose the alternate juror. Id. at 73. Each party

immediately used their challenges on the next two jurors and by default, Mr. Bingham

was deemed the one alternate juror. Id. at 73; Resp. Ex. B at 74. Trial counsel did not

make a second objection regarding his Batson challenge prior to the jury being sworn

in. Resp. Ex. B at 75-76.

On direct appeal, Petitioner, with the benefit of counsel, filed an initial brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), representing that no good faith argument of reversible error could be made. Resp. Ex. D. Petitioner then filed a pro se initial brief raising the following issue: "The trial court erred in overruling counsel's objection to the invalid race neutral rationale given in support of the peremptory strike of Ms. Joyce Matthews (African-American venire person)." Resp. Ex. E. The First DCA affirmed Petitioner's judgment and sentence without a written opinion. Resp. Ex. F.

Petitioner then raised the current ineffective assistance of trial counsel claim in his Rule 3.850 motion. Resp. Ex. J at 36-40. The trial court declined to consider this claim on the merits and denied it, finding in relevant part:

> Defendant complains that counsel failed to object when the trial court failed to properly investigate, pursuant to <u>Melbourne [v. State</u>, 679 So. 2d 759 (Fla. 1996)], the State's strike of one of two African-Americans in the venire.
>
> When a substantive claim is considered on direct appeal, a defendant is procedurally barred from re-raising it in subsequent collateral proceedings by couching it in terms of ineffective assistance of counsel. <u>Dennis v. State</u>, 109 So. 3d [680, 692] (Fla. 2012) (citing <u>Arbelaez v. State</u>, 775 So. 2d 909, 919 (Fla. 2000) (finding defendant may not attempt to relitigate claims raised on direct appeal by couching them in terms of ineffective assistance of counsel)). Here, the State's strike of the potential African-American juror was specifically considered on direct appeal. As this claim is procedurally barred, Claim Four is denied.

Resp. Ex. N at 152. The First DCA per curiam affirmed the summary denial without a written opinion. Resp. Ex. W.

Respondents assert that because the trial court denied this claim of ineffective assistance of counsel based on an independent and adequate state procedural bar, the

Court should also reject it as procedurally barred. Resp. at 25. However, the cases that the trial court cited to support its procedural bar are distinguishable from the procedural facts of this case. Notably, those courts found that a claim of ineffective assistance of counsel was procedurally barred because the underlying issue supporting the claim was raised on direct appeal as a claim of trial court error and denied on the merits. See Dennis, 109 So. 3d at 692 (holding that claim of ineffective assistance of counsel for failing to object to testimony that improperly bolstered other witnesses' testimony was procedurally barred because it was raised on direct appeal as a claim of fundamental error and was rejected on the merits); Arbelaez, 775 So. 2d at 919 (holding claim raised and rejected on direct appeal was procedurally barred on collateral review). In this action, it is unclear if the First DCA actually adjudicated the merits of Petitioner's pro se challenge on direct appeal to the state's use of a peremptory strike on Ms. Matthews. Trial counsel's failure to renew his objection prior to accepting the jury and the jury being sworn may not have preserved the issue for appellate review, and the First DCA did not issue a written opinion explaining its reasoning when it affirmed Petitioner's judgment and sentence. See, e.g., Zack v. State, 911 So. 2d 1190, 1204 (Fla. 2005) (finding that because trial counsel did not renew his objection to the state's peremptory challenge prior to the jury being sworn in, the issue was deemed abandoned); Joiner v. State, 618 So. 2d 174, 1776 (Fla. 1993); but see Gootee v. Clevinger, 778 So. 2d 1005, 1009 (Fla. 5th DCA 2001) (finding on direct appeal that objection made in close proximity to the jury being sworn, but not immediately before, was sufficient to preserve for appeal trial court's refusal to strike

jurors for cause). Therefore, the procedural bar imposed by the trial court when denying this claim of ineffective assistance of counsel is not "firmly established and consistently followed," and the Court is not required to defer to the state court's finding that this claim is procedurally barred.  See Williams v. Alabama, 791 F.3d 1267, 1273 (11th Cir. 2015) (noting that "[u]nder § 2254(d), AEDPA's deferential standard of review is limited to claims that have been 'adjudicated on the merits' in state court."). As such, the Court will address the claim de novo. Id. (citing Cone v. Bell, 566 U.S. 449, 472 (2009)) (explaining that "[i]f the state court did not reach the merits of a petitioner's claim based on some ground that is not adequate to bar federal review, we must review the claim de novo").

In Sneed v. Florida Department of Correction, 496 F. App'x 20, 26 (11th Cir. 2012), the Eleventh Circuit discussed the purviews of a Batson challenge:

> Batson requires a court to undertake a three-step analysis to evaluate equal protection challenges to a prosecutor's use of peremptory challenges. 476 U.S. at 96-98; McGahee v. Alabama Dep't of Corr., 560 F.3d 1252, 1256 (11th Cir. 2009). First, a defendant must make a prima facie showing of purposeful discrimination based upon a prohibited ground. Batson, 476 U.S. at 96-97. A prima facie case is established where a defendant shows that "he is a member of a cognizable racial group and that the relevant circumstances raise an inference that the prosecution has exercised peremptory challenges to remove from the venire members of his race." Bui v. Haley, 321 F.3d 1304, 1313 (11th Cir. 2003) (quotation and alterations omitted). Upon such a showing, the burden of proof shifts to the State to provide a race-neutral explanation for excluding the jurors. Batson, 476 U.S. at 97. Finally, in light of the parties' submissions, the trial court has the duty to determine if the defendant established purposeful discrimination. Id. at 98.

Sneed, 496 F. App'x at 26. If presented with this question on direct appeal, the Court might question the trial court's decision to overrule trial counsel's objection to the state's use of a peremptory strike on Ms. Matthews. However, not only is the Court without sufficient information to decide this constitutional claim in terms of trial court error, Petitioner only presents it to the Court as a collateral claim of ineffective assistance of trial counsel. Indeed, as the Eleventh Circuit has held, "[a]lthough a successful Batson claim generally requires automatic reversal on direct appeal, see Rivera v. Illinois, 556 U.S. 148, 161 (2009), the same is not true on collateral review." Price v. Sec'y Fla. Dep't of Corr., 548 F. App'x 573, 576 (11th Cir. 2013). Notably, "the law of this circuit [is] that an ineffective assistance of counsel claim based on a failure to object to a structural error at trial requires proof of prejudice" and deficient performance under Strickland. Id. (quoting Pruvis v. Crosby, 451 F.3d 734, 742 (11th Cir. 2006)).

The record reveals that trial counsel raised appropriate objections to the striking of Ms. Matthews. Following trial counsel's objection, the interaction between the parties and the trial court appears to follow the three-step analysis under Batson. The state revealed the reasons why it wished to strike the juror, and Petitioner never provided the trial court with any evidence tending to discredit the persuasiveness of the prosecutor's stated reasons for striking the juror. While Petitioner argues that the state's failure to also strike Mr. Bingham supports his claim, he cannot refute the record evidence that the state used its final peremptory strike before getting to Mr. Bingham or that trial counsel may have made a strategic decision to use his final

peremptory strike on the juror before Mr. Bingham. As such, Petitioner has not established deficient performance under <u>Strickland</u>. <u>See</u> <u>Sneed</u>, 196 F. App'x at 26 (finding trial counsel not deficient "where, upon being challenged, the [s]tate revealed that it wished to strike [] juror because two prosecutors had seen her sleeping during the jury selection process, and the trial court then moved onto the next juror" showed <u>Batson</u>'s three-step process followed).

In any event, even assuming that trial counsel was deficient, Petitioner has not shown prejudice. Mr. Bingham was an alternate juror who did not participate in the jury's deliberations. Resp. Ex. C at 365; <u>see, e.g.</u>, <u>Carter v. Kemna</u>, 255 F.3d 589, 593 (8th Cir. 2001) (finding state court's decision to deny <u>Batson</u> challenge regarding alternate juror was reasonable, because "if no alternate deliberates on the verdict, a court could reasonably believe the improper exclusion of an alternate juror is not a structural error [as] it is clear the error never affected the makeup of the petit jury that decided to convict the defendant"). Further, and of more import, Petitioner has not shown that had counsel pursued his objection, his challenge would have ultimately been successful, nor has he shown a reasonable probability that had Ms. Matthews served on his jury, the outcome of his trial would have been different. <u>See</u> <u>Price</u>, 548 F. App'x at 576 (holding that the petitioner not prejudiced by trial counsel's failure to make <u>Batson</u> objection, because "'there is no evidence that an African American juror would have seen the evidence any differently than the white jurors seated on the jury.' . . . As the district court noted, race was not the central theme of this case, and did not play a significant role."); <u>Sneed</u>, 496 F. App'x at 27 (holding that the petitioner failed

to demonstrate prejudice under <u>Strickland</u> because he "has not shown that, had counsel objected, his challenge would have been successful, nor is it clear that the second prospective black juror being on the jury would have carried a reasonable probability of changing the outcome of the trial.") (citation omitted). Notably, considering the substantial evidence of guilt presented at trial, Petitioner cannot show a reasonable probability that he would have been found not guilty. <u>See</u> <u>United States v. Ball</u>, No. 8:03-cv-2699-T-23MSS, 2007 WL 1017574, at *6 (M.D. Fla. Mar. 30, 2007) (holding that petitioner failed to establish prejudice from counsel's failure to make <u>Batson</u> challenge because overwhelming evidence of guilt refuted the petitioner's assertion that another jury might have reached a different result). Consequently, Ground Six is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.      If Petitioner appeals this Order, the Court denies a certificate of appealability.  Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion

to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[7]

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of October, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:     James C. Curry, #J32897
       Thomas H. Duffy, Esq.

---

[7] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.